Barckley A. **STOREY** and Martha Storey,
Plaintiffs-Appellants,

v.

**UNITED STATES** of America,
Defendant-Appellee.

No. 14665.

United States Court of Appeals
Sixth Circuit.

July 27, 1962.

William R. Bagby, Lexington, Ky., for appellants.

Edward L. Rogers, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Harold M. Seidel, Attys., Dept. of Justice, Washington, D. C., Bernard T. Moynahan, Jr., U. S. Atty., Moss Noble, Asst. U. S. Atty., Lexington, Ky., on the brief), for appellee.

Before MILLER, Chief Judge, CECIL, Circuit Judge, and STARR, Senior District Judge.

STARR, Senior District Judge.

Plaintiffs appeal from a judgment dismissing their suit for refund of a deficiency income tax and interest alleged to have been erroneously assessed and collected for the year 1954. The case was heard and determined upon the following stipulation of facts filed in the district court:

"1. This suit is for the recovery of Federal income tax and interest for the calendar year 1954 and the basis of the jurisdiction of the Court is Title 28 U.S.C. Sec. 1346 (a) (1). The plaintiffs are, and at all times pertinent hereto were, husband and wife and they are bona fide residents of Fayette County, Kentucky within the judicial district of the Court. The taxes and interest involved herein were paid and a timely claim for refund filed by plaintiffs was denied by the defendant.

"2. During 1938 Barckley A. Storey, one of the plaintiffs (referred to herein as the plaintiff), and one Frank J. Rees owned all of the outstanding stock of the Wombwell Automotive Parts Company, a Kentucky corporation (referred to herein as the corporation).

"3. The corporation had been financially successful due to the hard work and abilities of the plaintiff and Rees, and the complete harmony which existed between these two men. During 1938 the plaintiff and Rees came to the realization that the

death of either of them would result in complications which could seriously handicap the future progress of the corporation and of the value of the stock of the corporation owned by plaintiff and Rees (the stock of the corporation is referred to herein as the stock).

"4. In order to avoid the aforementioned trouble in the event of the death of either of them, the plaintiff and Rees on December 29, 1938 entered into a contract (referred to herein as the contract). Under this contract the survivor was given the absolute right to acquire the stock of the deceased from the estate of the deceased and the contract provided the financial arrangement by which the survivor could purchase that stock. (A true copy of the contract is attached hereto as Exhibit A and made a part hereof).

"5. Under the contract Rees agreed to secure and maintain an insurance policy on the life of the plaintiff with a face value of $95,-000.00 and the plaintiff agreed to secure and maintain an insurance policy on the life of Rees with a face value of $90,000.00. In pursuance of the terms of the contract Rees insured the life of the plaintiff for $95,000.00 and the plaintiff insured the life of Rees for $90,000.00. Rees was named the beneficiary under the policy on the plaintiff's life and plaintiff was named the beneficiary under the policy on Rees' life.

"6. Under the contract, at the death of Rees or the plaintiff, the proceeds from the insurance on the life of the deceased were to be collected and used by the survivor to purchase for himself the stock of the deceased.

"7. The survivor was required to buy all of the stock of the deceased up to a value equal to double the insurance proceeds received from the policy owned by the survivor on the life of the deceased. The survivor had the option to purchase any additional stock the deceased owned at his death. If the insurance proceeds were insufficient to pay for the stock required to be purchased, or insufficient to pay for the stock purchased, the contract provided that the survivor had to pay the balance of the purchase price either in cash or by executing his 4% notes payable to the estate of the deceased for the unpaid balance.

"8. The purchase price the survivor was required to pay for the stock was the book value of the stock at the time of the death of the deceased. However, the contract also required that the price to be paid the Rees estate for his stock could be no less than $90,000.00 (the amount of insurance proceeds on Rees' life which plaintiff would receive) and the price to be paid the plaintiff's estate for his stock could be no less than $95,000.00 (the amount of insurance proceeds on plaintiff's life which Rees would receive).

"9. Under the contract, Rees was required to pay, and until his death he did pay, for the premiums for the policy on the life of the plaintiff; and the plaintiff was required to pay until the death of Rees, and he did pay, for the premiums for the policy on the life of Rees.

"10. The contract provided that upon the death of one of the parties the insurance policy on the life of the survivor, taken out, owned and maintained by the deceased, would become the property of the survivor without any charge of any kind. That is, if Rees died, the insurance policy on plaintiff's life, which Rees had taken out, owned and maintained by paying the premiums, was to become the property of the plaintiff. Similarly, if the plaintiff died first, the insurance policy on Rees' life, which plaintiff had taken out, * * * was to become the property of Rees.

"11. During the lifetime of plaintiff and Rees, their contract could be terminated only by mutual agree-

ment, the dissolution or bankruptcy of the corporation, or the lapse of the life insurance policies. In the event of any and every termination of the contract during their joint lives the ownership of the policy on plaintiff's life would automatically be transferred from Rees to plaintiff and the policy on Rees' life would automatically be transferred from plaintiff to Rees. In other words, Rees would become the owner of the policy on his own life and the plaintiff would become the owner of the policy on his own life.

"12. Rees died on June 4, 1953. The plaintiff being the survivor, purchased from the Rees Estate at book value the stock which Rees owned at his death. The book value of the stock Rees owned at his death was $180,000. The proceeds of $90,000 received by plaintiff from the policy on Rees' life plus the funds plaintiff himself provided from other sources in the amount of $90,000 were used by plaintiff in making full payment for the stock to the Rees Estate pursuant to the contract. The Rees' stock was thereupon transferred to the plaintiff.

"13. Pursuant to the contract, upon the death of Rees, the policy on plaintiff's life, which was owned by Rees at his death, became the property of the plaintiff. The policy on his own life was thereupon delivered to the plaintiff. The cash surrender value of the life insurance policy on plaintiff's life was $29,069.59 at the time of Rees' death.

"14. In 1954 plaintiff sold some of the stock which he had acquired by purchase under the contract from the Rees Estate. In the computation of his gain on the sale, for his 1954 income tax return, plaintiff used as the cost basis of the stock the amount of $180,000 which was the price he paid the Rees Estate. The Commissioner of Internal Revenue determined that the cost basis to plaintiff of such stock was $180,000

less $29,069.59, the cash surrender value of the insurance policy on plaintiff's own life which, under the contract, became the property of plaintiff at the death of Rees.

"15. In computing the plaintiff's capital gain on the sale of the stock in 1954, if the plaintiff's cost basis was $180,000, the Court should enter a judgment for the plaintiff for $3,820.44 and $578.03, the amount of taxes and interest, respectively, paid by the plaintiffs to the defendant, plus interest on $3,820.44 from October 28, 1957, until paid, and interest on $578.03 from November 20, 1957, until paid.

"16. If the defendant was correct in reducing the basis claimed by plaintiff by the cash surrender value of the insurance policy on plaintiff's life at the death of Rees, a judgment should be entered for the defendant, dismissing the plaintiff's complaint with prejudice."

The pertinent provisions of the contract between appellant Barckley A. Storey and his business partner, Frank J. Rees, executed December 29, 1938, are set forth in the foregoing stipulation of facts. Rees died June 4, 1953, and in 1954 appellant Storey sold some of the stock, which under the contract he had acquired by purchase from the Rees estate. In their 1954 joint income-tax return the appellants computed their capital gain on the stock sold on the cost basis of $180,000, which was the book-value price appellant Barckley Storey had paid for all of the Rees stock under the terms of the contract. The Commissioner of Internal Revenue determined that appellants' capital gain was on the adjusted-cost basis of $150,930.41, which was the price of $180,000 paid to the Rees estate less $29,069.59, which was the cash-surrender value of the insurance policy on the life of appellant Barckley Storey that under the contract had become his property upon the death of Rees. The Commissioner accordingly assessed appellants a deficiency income tax in the amount of $3,820.44, which they

paid together with interest of $578.03. The appellants' claim for refund was denied, and they began the present suit to recover the deficiency tax and interest, which they had paid. The district court held that the Commissioner had correctly determined the appellants' taxable gain on the sale of the stock in 1954 on the adjusted-cost basis of $150,-930.41 and entered judgment dismissing the suit.

The question presented on this appeal is: In determining appellants' capital gain for income-tax purposes from the sale of certain stock in 1954, should the cost of the stock be determined on the basis of the book-value price of $180,000, which appellant Barckley Storey had paid for his deceased partner's stock, or on the adjusted basis of $150,930.41, that is, the $180,000 paid less $29,069.59, the cash-surrender value of the insurance policy on Storey's life, which under their contract became his property upon his partner's death?

The applicable provisions of the Internal Revenue Code of 1954, 26 U.S.C. (I.R.C.1954) and regulations thereunder are as follows:

§ 1001. "(a) Computation of gain or loss.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain."

§ 1011. "The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter * * *), adjusted as provided in section 1016."

§ 1012. *"The basis of property shall be the cost of such property."*

Section 1.1012–1 of the Federal income-tax regulations promulgated under the Internal Revenue Act of 1954 (26 C.F.R., Part 1) provides in part:

"(a) *General rule.* In general, the basis of property is the cost thereof.

*The cost is the amount paid for such property in cash or other property."*

We have considered the provisions of the 1938 contract between appellant Storey and his business partner Rees. Clause Three (b) of the contract provided:

"Purchase of Deceased Owner's Stock.

"The surviving Owner shall buy the deceased Owner's stock and/or Trust Certificates, * * * which are owned at the time of his death. * * * The value of said stock shall be determined in the manner hereinafter provided in Clause Four hereof. * * *

"Clause Four—Valuation of Stock:

"For the purpose of this agreement the value of each Owner's stock shall be the book value of said stock as disclosed by the books of the Company on the first day of the month preceding the death of an Owner and without any allowance for good will for the Company or for any subsidiary of the Company, however, should the Company or any subsidiary thereof be the beneficiary of any policy or policies of insurance on the life of a deceased Owner, the proceeds of such insurance shall be considered an asset of the Company and is to be included in computing the book value set forth above.

"For ascertaining such value the survivor shall appoint a representative and in the event of the prior death of the said Frank J. Rees, his successor in trust under said Trust Agreement, shall appoint a representative and in the event of the prior death of the said B. A. Storey, his executor or personal representative shall appoint a representative. Should said representatives disagree on any items, they jointly shall appoint a public accountant to act as arbitrator whose decision shall be final on the items in dispute. Should no arbitrator be appointed within ten days after such dispute arises,

the auditor making the last audit of the books of the WOMBWELL AUTOMOTIVE PARTS COMPANY shall act as such arbitrator."

Clause Two of the contract provided:

"(b) The Means by Which the Stock Will Be Purchased.

"In order to provide means for purchasing a deceased Owner's stock, and/or Trust Certificates, each of the Owners has caused the life of the other Owner to be insured and there has been issued on the lives of the Owners the ownership life insurance policies which are more fully described in Schedule 'A' hereto attached, which schedule has been initialed by each of the Owners for the purpose of identification. The Owners have delivered said policies to the Trustee and have caused or will cause, all of the same to be made payable to the Trustee hereunder, and the Trustee hereby acknowledges receipt of said policies.

"(b-1) Payment of Premiums:

"The total net premiums on the policies of insurance deposited hereunder will be paid by each Owner on the policies which he has purchased on the life of the other Owner."

Clause Three (g) of the contract provided:

"Right of Owners in Cash Surrender Values.

"The policies in effect on the life of the surviving Owner under the terms of this contract shall be delivered to said surviving Owner *without charge of any kind* and the surviving Owner is to have complete control and ownership thereof."

Under the provisions of the Internal Revenue Code of 1954 hereinbefore quoted the capital gain which appellants realized from the sale of the stock in 1954 would be the excess of the sale price over the adjusted basis or cost to appellant Barckley Storey of the stock which he purchased from his deceased partner's estate. Under §§ 1011 and 1012 of the Code and § 1.1012–1 of the income-tax regulations the adjusted basis for determining the appellants' capital gain would be the cost to appellant Barckley Storey of the stock which he purchased from his deceased partner's estate. The foregoing terms of the 1938 contract between the partners are the controlling factor in determining the cost to appellant Barckley Storey of the stock which he purchased from the Rees estate.

By their contract appellant Storey and his partner Rees had agreed that the purchase price to the surviving partner of the deceased partner's stock would be the book value of the stock, and the contract expressly provided a specific method for determining the book-value price to be paid by the surviving partner for the stock of the deceased partner. Under the contract each partner, for his own financial benefit and protection, paid the premiums and maintained an insurance policy on the life of the other partner. Upon the death of either partner the policy which the deceased had maintained upon the life of the survivor was to pass to and become the property of the survivor "without charge of any kind." The policy on the life of the survivor was to become his property in reciprocal consideration of the premiums which he had paid on the policy on the life of the deceased partner. It is clear that under the terms of the contract the premiums paid and the cash-surrender values of the insurance policies maintained on the lives of the partners were not to be considered in determining the purchase price the surviving partner was to pay for the stock of the deceased partner. Furthermore, as the contract provision hereinbefore quoted expressly provided in effect that the insurance policy on the life of Storey as the surviving partner should, upon the death of Rees, be delivered to and become Storey's property *"without charge of any kind,"* it is clear that the partners did not intend that the purchase price or cost of the stock would be reduced or affected by the cash-surrender value of the policy. If they had

intended that the cash-surrender value of the policy on the survivor's life would be applied on the purchase price he was to pay for the deceased partner's stock, they would have so provided in their contract. To hold with the appellee's contention that the cost to surviving partner Storey of the stock of his deceased partner Rees was not the $180,000 he paid but was $150,930.41 would in effect change the terms of the 1938 contract between the partners relative to the purchase price to be paid by the surviving partner. The terms of the contract cannot be changed merely to provide for the collection of additional income tax.

We find no provision in the Internal Revenue Code of 1954 or the regulations thereunder which would require that the book-value price of $180,000 paid by appellant Barckley Storey for the stock of his deceased partner Rees be adjusted or reduced by the cash-surrender value of the insurance policy on Storey's life, which under their contract became his property upon the death of his partner "without charge of any kind." Section 1012 of the Internal Revenue Code of 1954 expressly provides that "the basis of property shall be the cost of such property." Therefore, we hold that for income-tax purposes the purchase price of $180,000, which surviving partner Storey was to pay, and did pay, for the stock of his deceased partner Rees, was the cost to him in determining appellants' capital gain on the stock sold in 1954. The several decisions cited by the appellee are distinguishable from the present case on the basis of the facts involved and do not sustain its contentions.

We accordingly conclude: (1) That the Commissioner erroneously computed appellants' capital gain on the stock sold in 1954 on the cost basis of $150,930.41, which was the book-value price of $180,-000 that appellant Storey paid the estate of his deceased partner, less $29,069.59, the cash-surrender value of the insurance policy on his life; (2) that in computing their capital gain on the stock sold in 1954 in their 1954 income-tax return, the appellants properly computed their capital gain on the cost basis of $180,000 paid for the stock purchased from the Rees estate; and (3) that the Commissioner erroneously assessed appellants a deficiency tax of $3,820.44.

For the reasons herein stated the judgment of the district court is reversed and a judgment will be entered in favor of the appellants for the sum of $3,820.44 and interest of $578.03, plus interest on $3,820.44 from October 28, 1957, until paid and interest on $578.03 from November 20, 1957, until paid.